D. Woodrow WORTHINGTON, Plaintiff,

v.

COMMODITY CREDIT CORPORATION,
Defendant.

Civ. No. 1050.

United States District Court
E. D. North Carolina,
Raleigh Division.

Dec. 9, 1957.

Denney & Landrum, Lexington, Ky., Weeks & Muse, Tarboro, N. C., for plaintiff.

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for defendant.

GILLIAM, District Judge.

This is an action for a declaration of rights between the plaintiff, a tobacco auction warehouseman, and the Commodity Credit Corporation, which is an agency of the United States created by an Act of Congress. The plaintiff seeks to test the validity of an administrative decision of the defendant corporation denying price supports to tobacco sold through any tobacco auction warehouse or tobacco auction business in which the plaintiff in any way has an interest. The facts of the case appear as follows:

In 1951 and 1952 the plaintiff committed misdemeanors by violating the tobacco laws and subsequently was convicted of the same. In the 1953–54 season in Kentucky nested tobacco was received from the plaintiff at a redrying plant at Shelbyville, Kentucky, and subsequently was returned to the plaintiff. The defendant has frequently found irregularities in the plaintiff's tobacco operations. The plaintiff's reputation among buyers is very poor as they seriously question his integrity. In spite of the above, however, the plaintiff enjoys an excellent reputation with the tobacco producing farmers. In July of 1955, the defendant corporation by letter advised the plaintiff that "price support will not be made available through auction warehouses which D. Woodrow Worthington,

Winterville, N. C., owns, operates, or in which he in any way has an interest".

In keeping with its decision, the defendant has refused to extend price supports through any tobacco auction warehouse which the plaintiff owned, operated, or in any way had an interest with the exception of the 1955 season. During the 1955 season price supports were extended through a tobacco auction warehouse business carried on by a lessee in a warehouse owned by the plaintiff. The defendant subsequently learned that the plaintiff in fact actively participated in the operation of that business. Since that time the defendant has refused to extend price supports through a tobacco auction business carried on by a lessee of the plaintiff. It is the present intention of the defendant corporation to effectuate its decision in the future to its exact letter.

At the outset, the defendant moves to dismiss for that: (1) the Court lacks jurisdiction over the defendant because of insufficiency of service of process; (2) the Court lacks jurisdiction over the subject matter of the action; (3) the complaint fails to state a claim upon which relief can be granted.

With regard to service of process, Rule 4(d) (5) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service may be made upon an agency of the United States by serving the United States and by delivering a copy of the summons, if the agency is a corporation, in the manner provided by Rule 4(d) (3); which in turn provides that service upon a corporation shall be made by delivering a copy of the summons to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. In the instant case service was made on the defendant corporation by serving Mr. Joe Williams, Director of Tobacco Division, Commodity Stabilization Service, while Mr. Williams was in Raleigh, N. C.

By-law 24 of the Commodity Credit Corporation reads as follows:

"The Directors of the divisions and commodity offices of the Commodity Stabilization Service shall be contracting officers and executives of the Corporation in general charge of the activities of the Corporation carried out through their respective divisions or offices. The responsibilities of such Directors in carrying out activities of the Corporation, which shall include the authority to settle and adjust claims by and against the Corporation arising out of the activities under their jurisdiction, shall be discharged in conformity with these by-laws and applicable problems, policies, and procedures."

By-law 10 requires the Director of each division of the Commodity Stabilization Service to attend the meetings of the defendant corporation's Board of Directors when the meetings are devoted to consideration of matters relating to his division.

By his own testimony, it is established that Mr. Williams is undoubtedly in complete charge of the tobacco program of the defendant corporation, subject, of course, to the Board of Directors of the defendant corporation and the Secretary of Agriculture.

The purpose for service of process is to notify the defendant of the cause of action so that the defendant will have full and adequate opportunity to defend against the same. It is the opinion of this Court that Mr. Williams is a managing or general agent sufficiently interested in the defendant to assure the latter's being promptly and fully advised of the pendency and nature of any suit brought against it; and that, therefore, the Court acquired jurisdiction over the defendant by the service of process in this case.

In this action the plaintiff firstly contends that under the statutes involved the defendant has no discretion but must extend price supports through *all* tobacco warehouses, including those in which the plaintiff has an interest. This contention clearly presents a claim of a justiciable nature upon which relief can be granted provided the determina-

tion of the claim lies within the jurisdiction of the Court. As presented, the plaintiff through his claim seeks a declaration of a legal duty on the part of the defendant which, except for the procedure of declaratory judgment, would normally be enforced by a writ of mandamus. The Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq., did not enlarge the jurisdiction of the District Courts of the United States. Grave doubts exist as to whether this Court has jurisdiction to issue a writ of mandamus, and, therefore, there are grave doubts as to the jurisdiction of this Court to determine and declare the validity of the plaintiff's first contention. This doubt remains notwithstanding the fact that the Charter Act of the defendant corporation provides that *"any* suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business." (emphasis added) 15 U.S.C.A. § 713b.

■ However, in order to avoid a multiplicity of suits (in view of the fact that the issue described above is joined with a claim the determination of which clearly lies within the jurisdiction of this Court), all doubt will be resolved in favor of the plaintiff and the merits of his first contention will be reached.

The basis for the plaintiff's contention that the defendant must extend price supports through warehouses in which the plaintiff has an interest is the language contained in the Charter Act (15 U.S.C.A. § 714 et seq.) of the defendant corporation. Under the heading "Specific powers of [the] Corporation", the following, in addition to other matter, is found:

"In the Corporation's purchasing and selling operations with respect to Agricultural commodities, (except sales to other government agencies), and in the warehousing, transporting, processing or handling of agricultural commodities, the Corporation shall, to the maximum extent practicable consistent with the ful-

fillment of the Corporation's purposes and the effective and efficient conduct of its business, utilize the usual and customary channels, facilities, and arrangements of trade and commerce." 15 U.S.C.A. § 714c.

■ The Agricultural Act of 1949, 7 U.S.C.A. § 1421 et seq., provides that price supports shall be made available through the defendant corporation. Clearly the extension of price supports by the defendant corporation is an operation involving the handling of tobacco to which applies the above quoted portion of Sec. 714c of Title 15 U.S.C.A.

■ But it seems clear to this Court that the plaintiff's argument is without merit. The language of Sec. 714c does not direct that *all* facilities shall be used, but only that the customary facilities shall be used "to the maximum extent practicable consistent with (1) the fulfillment of the Corporation's purposes, and (2) the effective and efficient conduct of its business." (numerals inserted) The limitation is plain. The corporation in its discretion determines when either limitation is applicable to a particular case.

Although this Court will accept, for the purpose of this case, the view that the corporation in its purchasing and storage operations must use as far as practicable *all* usual and customary facilities compatible with its purpose and efficient operation, it is noted that the language of Sec. 714c is subject to a slightly different interpretation somewhat suggested or inferred in Sec. 714b (h). This latter section empowers the defendant corporation to use, in accordance with the usual customs of trade and commerce, plants and facilities with regard to commodities subject to its control; to acquire necessary personal property; to acquire real property when necessary for storage purposes; etc. But the power, under Sec. 714b(h), to use and acquire personal and real property is limited by the following proviso:

"That nothing contained in this subsection shall limit the duty of the

Corporation, to the maximum extent practicable consistent with the fulfillment of the Corporation's purposes and the effective and efficient conduct of its business, to utilize the usual and customary channels, facilities, and arrangements of trade and commerce in the warehousing of commodities."

In view of the above, it appears to the Court that possibly the policy established by Sec. 714c is to insure that it be the policy of the defendant corporation to use usual and customary trade facilities, the use of which is both quantitatively and qualitatively consistent with the corporation's purposes and efficient operation, to the maximum extent *rather than* use unusual facilities or establish government facilities which would compete with private enterprise (where such constituted the usual facilities) and constitute a wasteful expenditure. Thus the direction to use to the maximum extent is qualified, and instead of being a directed policy in itself becomes a condition precedent to the availability of other possible action on the part of the defendant. However, whether or not this latter construction is correct need not be determined for the purpose of this case.

Therefore, assuming that it is the duty in itself of the defendant corporation to use all customary facilities compatible with its purposes and efficient operation, the plaintiff next contends that the defendant has abused its discretion in determining that the use of a tobacco auction business, as a price support medium, operated, de jure or de facto, by the plaintiff or the use of a tobacco auction business carried on by a lessee in a warehouse owned by the plaintiff is incompatible with the defendant corporation's purpose or efficient operation. The substance of this complaint is that the defendant has not fulfilled its legal duty imposed by statute. Here again the normal remedy would be by way of mandamus, and therefore the jurisdiction of this Court to determine the issue is doubtful. But resolving doubts in favor of the plaintiff, the following at least seems apparent.

■ The plaintiff's past conduct and reputation indicate a lack of integrity as a tobacco warehouseman. This lack of integrity has manifested itself where the plaintiff has participated in the active management of a tobacco auction warehouse to the detriment of either the defendant corporation, other buyers, or the farmers. Naturally, either detriment to itself or the farmers is incompatible with the purpose of the defendant corporation; and it is the further opinion of this Court that detriment to buyers is also incompatible, for the buyers will reduce their bids to all producing farmers selling in the plaintiff's warehouse in order to compensate for the risk of fraud which they have been forced to assume by operating therein. Clearly, therefore, the use of a tobacco business actively participated in by the plaintiff as a medium for extending the defendant's price support operations may reasonably be expected to be incompatible with the defendant corporation's purposes, and therefore the defendant has not abused its discretion in so refusing to extend price supports.

As to whether or not the defendant has abused its discretion in refusing to extend price supports through a tobacco auction warehouse business carried on by a wholly independent lessee in a warehouse owned by the plaintiff need not be determined in view of the opinion of the Court with regard to the plaintiff's third contention. The substance of this last argument is that the refusal to extend price supports through a tobacco auction warehouse business actively participated in, de jure or de facto, by the plaintiff or through a tobacco auction warehouse business carried on by a wholly independent lessee but in a warehouse owned by the plaintiff constitutes a deprivation of property without due process of law in violation of the 5th Amendment to the Constitution of the United States.

■ It seems clear that the Court has jurisdiction over this issue, for it is.

well established that the Federal District Courts may determine and prevent legislative or administrative denial of due process of law. Such judicial action is of an equitable nature, and relief, when granted, is generally by way of injunction. Having historically rested within the equitable powers of the Court, this issue may be presented through the declaratory judgment procedure unless otherwise prohibited.

Unlike the plaintiff's former arguments, it cannot be seriously contended that the use of such procedure involves the question of mandamus. The plaintiff seeks to prevent an unlawful act, not to compel the performance of a legal duty. The Court is not being asked to declare that it is the duty of the defendant by virtue of its public office to extend price supports through the plaintiff's warehouse, but rather it is contended that the extension of price supports through the warehouses of others deprives the plaintiff of a property right without due process of law. That it may or may not be the duty of the defendant to extend price supports through the plaintiff is totally immaterial to the issue. The relief desired by the plaintiff could be achieved by a withdrawal of price supports through his competitors as well as by an extension of price supports through the plaintiff. It is the inequality of position brought about by the defendant's discrimination resulting in a deprivation of property which is the substance of the plaintiff's complaint. It is true that the effect of any coercive relief given by the Court is to force the defendant to comply with the law, but this is the effect of all relief, injunctive and otherwise.

The defendant points out that while the Charter Act of the defendant corporation provides that the corporation may sue and be sued, it further provides that no attachment or injunction or garnishment shall issue against the corporation or its property. 15 U.S.C.A. § 714b(c).

The defendant therefore urges that this claim is one upon which, in equity, relief could not be granted; and that the declaratory judgment procedure in the instant case is being used to supply relief in an action otherwise beyond the power of effective judicial determination. With this the Court agrees. Such was the very purpose of the Declaratory Judgment Act. 28 U.S.C.A. § 2201.

A leading authority on declaratory judgments is Borchard—Declaratory Judgments (Second Edition—1941). At page 966 this work contains the following comment concerning the use of the declaratory judgment to test the validity of administrative action where the use of injunction as a remedy is limited or prohibited:

"With the ever greater interference by government in the affairs of the private individual, it often becomes important to the individual to test the validity of the interference, present or proposed, before it is applied or invoked against him. Statute, ordinance, or administrative regulation, with or without penalties for disobedience, may seriously impair individual freedom of action. In both England and the United States, where the remedy of injunction is subject to conditions and limitations of various kinds, the declaratory judgment has become a convenient method of testing the propriety, validity, or constitutionality of administrative action. * * * In some cases a more definite threat of administrative action may be necessary to create justiciability. But it can hardly be supposed that a government official, the legality of whose act is challenged, requires more than a decision on the disputed question of law, and that injunction to restrain or mandamus to command him is anything more than a mere formality. The decision, not the coercive order, settles the dispute."

The Declaratory Judgment Act, 28 U.S.C.A. § 2201, does not purport to alter the character of controversies which are the subject of judicial

power under the Constitution, but merely provides an additional procedural remedy without creating new substantive rights. Injunctive relief is a procedural remedy. No one has a right to such relief, for the granting of the same lies within the discretion of the Court. The substantive rights between the parties in the present case are not altered by the fact that a remedy other than injunction is used. The fact that injunctive relief is no longer available is immaterial, for the Declaratory Judgment Act itself, 28 U.S. C.A. § 2201, provides that the rights of the parties may be declared *"whether or not further relief is or could be sought."* (Emphasis added.)

In addition to the above, another consideration bears upon this point. If it were felt that the use of the declaratory judgment in this case expanded, contrary to law, the jurisdiction of this Court in that it made litigable a claim upon which relief otherwise could not be granted, then the Court would have to explore the possibility of whether or not, absent the declaratory judgment as an available remedy in this case, other relief could be granted. If the declaratory judgment remedy were not available in the instant case, this Court would have grave doubts as to the validity of the statute providing the defendant with immunity to injunctive relief, for in the absence of the same the plaintiff would be without a remedy. It would hardly seem correct that Congress could clothe the government or its agency with immunity to injunctive relief when granted to enforce the Constitution unless another remedy was available—e. g. as the taxpayer's right to later recover a payment originally made under protest. Congress could hardly shield the government from judicial enforcement of the Constitution. If the statute providing immunity to injunctive relief were found invalid, then of course the plaintiff's claim would be one upon which relief could be granted, and the use of the declaratory judgment in the case at bar would not be an expansion of the Court's jurisdiction.

Be that as it may, it is the opinion of this Court that the use of the declaratory judgment procedure in the instant case does not attempt to enlarge the Court's substantive jurisdiction, and that the plaintiff's claim of a deprivation of property without the due process of law by the defendant corporation presents a controversy within the jurisdiction of this Court and is a claim upon which relief by way of declaratory judgment may be granted provided such claim is of justiciable character.

It is clear from the testimony that the refusal to extend price supports through a tobacco warehouse business removes the warehouse from competition. Naturally a non-price support warehouse cannot compete for the seller's business against a warehouse which in effect offers a guaranteed purchaser and price. The effect of the administrative decision in the case at bar is to deny the plaintiff the right to profit from engaging in or having his property used in the tobacco warehouse business. To argue otherwise is an abuse of intellectual integrity. The Court recognizes the fact that the loss of this right is serious and of considerable magnitude, for tobacco auction warehouses can be used for few other purposes, primarily because of geographic location and physical structure. Sale offers little hope of restoring to the plaintiff the value of this right, for a forced sale seldom brings true value.

The right to profit from the use or lease of property in a particular business is a property right at least in so far as it will be protected from *malicious* confiscation by governmental administrative officers. That the confiscation takes place through means of competition made available by governmental action does not necessarily mean that the damage is damnum absque injuria and not recognized in the law. It is true that in Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, at page 140, 59 S.Ct. 366, at page 371, 83 L.Ed. 543, cited by the defendant, the following statement appears:

" * * * damage consequent on competition, *otherwise lawful,* is in

such circumstances damnum absque injuria, and will not support a cause of action or a right to sue." (Emphasis added.)

But note the phrase "otherwise lawful". In support of the foregoing quotation Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374, is cited. This latter case holds that generally there is no remedy for damage resulting from competition made possible by governmental action; but it is also expressly stated in 302 U.S. at page 479, 58 S.Ct. at page 304, that "If conspiracy or fraud or malice or coercion were involved a different case would be presented * * *." In other words, in Tennessee Electric Power Co. v. T. V. A., Alabama Power Co. v. Ickes, and cases cited therein, the governmental action involved was material and relevant to policy established according to law by the legislative body, and therefore the decisions of those cases are confined to the proposition that the law does not recognize damage made possible by administrative governmental action where such action had some rational foundation. The cases clearly imply that if the administrative governmental action were without *any* rational foundation so that malice, conspiracy, fraud, or coercion constituted the motive for the same, then the damage would be recognized as justiciable as a denial of due process of law and susceptible to equitable relief. In accord with this inference, it is the opinion of this Court that as between equals one may not be arbitrarily and maliciously discriminated against by administrative governmental officers in the granting of privileges where the discrimination deprives that party of a property right through the medium of competition or otherwise; and that such presents a justiciable controversy within the jurisdiction of this Court.

 But in the present case the plaintiff's reputation and past conduct clearly indicate that he is not equal to other tobacco warehouse operators receiving price supports; for his past conduct and reputation indicate a lack of integrity which has manifested itself in the past management (and which the defendant may reasonably presume will manifest itself in the future management) of a tobacco warehousing business. The plaintiff's inequality is the result of his own acts, made, presumably, with knowledge of the law. Hence the refusal of price supports to a tobacco warehouse business which the plaintiff either controls or manages, de jure or de facto, is a result of his own activity, and is not arbitrary or without foundation. The administrative decision in issue, to that extent, does not deny the plaintiff due process of law.

 The administrative decision goes much further, however, than merely to refuse price supports to any tobacco warehouse business in the *operation* of which the plaintiff has an interest. It denies price supports to any tobacco warehouse business carried on in a warehouse owned by the plaintiff although the plaintiff has *absolutely nothing* to do with the operation engaged in by the lessee. Plainly the plaintiff's indicated lack of integrity affects only the operation of a business. There is nothing to indicate that the physical make-up or location of the plaintiff's warehouse materially and relatively in any way differs from other tobacco warehouses. There appears no justification for refusing to extend price supports to a business carried on by a lessee, *wholly unaffected by the plaintiff*, in the plaintiff's warehouse. The plaintiff, *as a landlord only*, appears *equal to other tobacco warehouse owners*. To deny price supports to a tobacco auction business owned by a totally *independent* lessee solely because of the identity of the physical warehouse owner is arbitrary, malicious, and discriminatory, for the identity of such an independent warehouse owner is wholly irrelevant to the business operations and the purposes of the defendant corporation in accord with policy established by the legislative body. Inasmuch as the discrimination resulting from this denial deprives the

plaintiff as a warehouse *landlord* of the right to lease his warehouse to another for its geographic and architectural purpose, such denial constitutes a deprivation of the plaintiff's property without due process of law for as between equals the government cannot discriminate in granting privileges *where the discrimination operates to destroy a property right originally possessed by the party discriminated against.*

But the plaintiff's position must be that of pure landlord, having no interest direct or indirect in the actual operation of the business, and any reasonable doubt as to this might justify a refusal or withdrawal of price supports to a business carried on in the plaintiff's warehouse.

The defendant cites Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108, and Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047, for the general proposition that there is no right to a government contract. These cases are not in point. The plaintiff here is not claiming a right to a government contract; he is not claiming that he has been denied expectant and hoped for profits resulting from government purchases; but is instead urging that the government cannot discriminate in contracting with his equals where the effect of such discrimination is to deprive him totally and absolutely of the right to profit from property.

In this case the governmental action by arbitrarily producing an unequal position eliminates rather than promotes competition, and it is interesting to note that our laws pertaining to trade regulation are designed to prevent just such actions and results in the field of private enterprise.

It is therefore adjudged that the defendant corporation's decision to deny price supports through auction warehouses which the plaintiff owns, operates, or in any way has an interest is invalid insofar as it refuses the extension of price supports through a tobacco auction business carried on by a *wholly independent* lessee in a warehouse owned by the plaintiff.